# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**ROBERT B., JR.,**[1]

    Plaintiff,        Civ. No. 1:19-cv-00017-AA

  v.            **OPINION & ORDER**

**ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY**,

    Defendant.

_____

AIKEN, District Judge:

  Plaintiff Robert B., Jr. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

## BACKGROUND

  On April 21, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on February 28, 2015. Tr. 13. The claims were denied initially and upon reconsideration. *Id.* At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on July 9, 2018. *Id.* On August 30, 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 22. The Appeals Council denied

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1.  This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

**THE ALJ'S FINDINGS**

The ALJ performed the sequential analysis, noting Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2015.  Tr. 15.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, February 28, 2015.  *Id.*  The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine and bilateral shoulder osteoarthritis.  *Id.*  The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment.  Tr. 17.

The ALJ determined Plaintiff had the RFC to perform light work with the following additional restrictions: he can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; he can sit, stand, and walk for 6 hours in an 8-hour day; he can occasionally climb ramps and stairs; he should never climb ladders, ropes, or scaffolds; he can occasionally stoop, kneel, crouch, and crawl; and he should reach overhead, bilaterally, no more than occasionally. Tr. 18.

The ALJ found that Plaintiff was able to perform his past relevant work as a sales clerk or personnel manager.  Tr. 22.  Accordingly, the ALJ determined that Plaintiff was not disabled.  *Id.*

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that

supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) failing to properly weigh the medical opinion evidence; (2) discounting his subjective symptom testimony; and (3) improperly discounting lay witness testimony.

### I.    Medical Opinion Evidence

Plaintiff contends the ALJ erred by rejecting the medical opinion evidence of treating physicians Jason Conaughty, M.D., and Michelle Rushton, M.D. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle, v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427

F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

### A. Dr. Conaughty

On September 29, 2016, Dr. Conaughty submitted a "Spinal Nerve Root Compression" questionnaire concerning Plaintiff's impairments. Tr. 461-62. Dr. Conaughty reported that Plaintiff had myelopathy due to stenosis with evidence nerve root compression and neuro-anatomic distribution of pain. Tr. 461. Dr. Conaughty opined that Plaintiff would be limited to 15 degrees of flexion, 20 degrees of extension, and 15 degrees of lateral bending on the left and right. *Id.* Dr. Conaughty reported that Plaintiff had muscle weakness, as well as a loss of coordination and balance, which necessitated the use of a cane. *Id.* Dr. Conaughty reported loss of reflexes in Plaintiff's right triceps and in both left and right biceps. Tr. 462. Dr. Conaughty indicated that there was involvement of the lower back but that Plaintiff did not have a positive straight-leg raising test in sitting and supine. *Id.* Dr. Conaughty opined that Plaintiff's combined impairments were medically equal to Listing 1.04A because "findings of exam consistent with myelopathy from cervical stenosis." *Id.* The final questionnaire field asked "What is the earliest date that the description of symptoms and limitations in this questionnaire applies?" *Id.* Dr. Conaughty left that field blank. *Id.*

The ALJ gave "some" weight to Dr. Conaughty's opinion, noting that it was "consistent with the medical record as a whole," but "he did not provide an onset date so it is unclear if that [sic] limitations provided would have been present during the relevant period. Tr. 21.

The Commissioner contends that the ALJ properly discounted Dr. Conaughty's opinion because he only began to treating Plaintiff after the relevant period. *See* Tr. 358 (Dr. Conaughty

began treating Plaintiff on April 1, 2016). Although the opinion of a medical provider who examines a claimant after his insured status expired is entitled to less weight, *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996), the Ninth Circuit has "specifically held that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Taylor v. Comm'r*, 659 F.3d 1228, 1232 (9th Cir. 2011) (internal quotation marks and citation omitted).

In this case, Dr. Conaughty began treating Plaintiff only a few months after the expiration of Plaintiff's insured status and the ALJ found that Dr. Conaughty's opinion was consistent with the medical record as a whole, referring to the pre-expiration medical opinions. Tr. 21. The only basis provided for rejecting Dr. Conaughty's opinion was his failure to complete the portion of the form asking when Plaintiff began to experience the limitations and symptoms described in Dr. Conaughty's report. *Id.* The ALJ found that this failure left it "unclear" whether the limitations existed during the relevant period, but Plaintiff points out that an ALJ has a duty to develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Given the fact that Dr. Conaughty's opinion was "consistent with the medical record as a whole," and that he began treating Plaintiff shortly after the relevant period, the Court concludes that the ALJ failed to give adequate justification for discounting Dr. Conaughty's opinion concerning medical equivalency.

### B. Dr. Rushton

Dr. Rushton began treating Plaintiff in February 2017 and submitted three medical opinion reports in which she assessed substantial limitations. Tr. 1812-24. The ALJ noted that Dr. Rushton did not begin treating Plaintiff until over a year after the date last insured. Tr. 21; Tr. 1812 (Dr.

Rushton began treating Plaintiff on February 24, 2017).  Accordingly, the ALJ found that Dr. Rushton's opinion "is not relevant to the determination of disability in this case," and gave no weight to the questionnaires without further discussion.  *Id.*

As previously discussed, an ALJ may give less weight to a medical opinion given by a provider who treated the claimant after the expiration of insured status, but medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition.  *Marci*, 93 F.3d at 545; *Taylor*, 659 F.3d at 1232; *Dion W.H. v. Comm'r*, Case No. 6:17-cv-63-SI, 2018 WL 2875893, at *8 (D. Or. June 11, 2018).  In this case, Dr. Rushton opined that her description of Plaintiff's symptoms and limitations had applied for more than two years.  Tr. 1815; Tr. 1819 (symptoms and limitations dated back "prior to 2015, worse since surgery,"); Tr. 1824 (noting same).  Because Dr. Rushton's opinion encompassed Plaintiff's limitations reaching back into the relevant period, the ALJ erred by dismissing them out of hand.

## II.    Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting his subjective symptom testimony.  To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis.  20 C.F.R. § 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  At the second stage of the analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms.  *Carmickle*, 533 F.3d at 1160.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  *Ghanim v. Colvin*,

763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, unexplained failure to follow treatment, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In this case, Plaintiff testified that he stopped working after his ability to use his arms was diminished and he lost strength in the left side of his body. Tr. 93. He experienced significant headaches, pain in his cervical spine, significant weakness in both shoulders, and a loss of stability. Tr. 94. He rated his pain as a 7 on a scale of 10. *Id.* Plaintiff had fusion surgery on his neck, which limited his ability to move his neck back and forth or up and down. Tr. 94-95. Plaintiff underwent a succession of additional surgeries and experienced complications stemming from those procedures. Tr. 95-96.

Plaintiff is unsteady on his feet and walks with the assistance of a cane, prescribed by his physician. Tr. 96-97. He experiences daily headaches, which he treats with pain medication, muscle relaxants, and lying down in a darkened room. Tr. 97-98. Plaintiff also takes medication for depression. Tr. 102. Plaintiff's medication leaves in him a "fog," impairs his ability to concentrate, and affects his mood. Tr. 99. Plaintiff testified that he's easily distracted and easily agitated and would have difficulty dealing with stress, pressure, and criticism. Tr. 102-03.

Plaintiff testified that he has muscle spasms in his hands, which make it difficult to write. Tr. 100. Plaintiff estimated that he could grip, grasp, and handle for four hours. Tr. 100-01. He has difficulty holding his arms out in front of his body or raising his arms above his head due to a lack of strength. Tr. 101. Plaintiff testified that he could list and carry about 10 pounds. *Id.*

Plaintiff has difficulty sleeping due to muscle spasms.  Tr. 102.  Plaintiff estimated that he could remain seated for no more than an hour due to neck and back pain and muscle spasms.  Tr. 103. Plaintiff lies down once or twice a day for an hour or more in order to get relief from his symptoms. Tr. 104.  Plaintiff estimated that he could walk for a city block and that, if he had to work, he would require hourly breaks.  Tr. 105.  His balance issues make it difficult to navigate stairs.  Tr. 105-06.

The ALJ's treatment of Plaintiff's subjective symptom testimony is not a model of clarity when it comes to the specific reasons for rejecting that testimony, although the Court concludes that it does not, as Plaintiff contends, cross over into a mere summary of the medical evidence, as in *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015).

First, the ALJ found that Plaintiff's allegations of disabling symptoms were contradicted by the medical evidence.  Tr. 19-21; Def. Resp. 7-8.  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle*, 533 F.3d at 1161. In this case, Plaintiff listed compression of the spinal cord in the neck and narrowing of the cervical spine among his medical conditions.  Tr. 227.  The Commissioner points to a note from examining physician Zakir Ali, M.D., in which he noted that the "actual structural damage is mild and on the right side."  Tr. 326.    In context, however, Dr. Ali was discussing Plaintiff's "significant cervical spondylosis" with "some radicular symptoms of radiating numbness and pain into the arms bilaterally."  *Id.*   An MRI from February 2015 revealed moderate or severe foraminal stenosis at multiple levels.  Tr. 77; *see also* Tr. 19-20 (ALJ discussing MRI showing "moderate severe multilevel multifactorial degenerative changes from C3-C5 to the C6-C7 vertebral levels,").   The ALJ noted that on October 25, 2015, Dr. Richard Heyerman found Plaintiff "positive for back pain, arthralgias and neck pain and that the claimant had a cervical MRI that showed severe

multilevel degenerative changes in the cervical spine." Tr. 20; Tr. 352. On this record, the ALJ's finding that Plaintiff's testimony was contradicted by the medical record was not supported by substantial evidence.

Next, the ALJ found that Plaintiff's "neck, back and shoulder pain were well controlled." 21. "Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006). On March 31, 2015, Plaintiff's treatment notes indicate that his "shoulder pain has significantly improved following a shoulder injection." Tr. 514. On February 29, 2016, Plaintiff reported that his medications have him "a 50% reduction in pain and a 70% improvement in his ability to function," which led the treatment provider to not that "overall his pain is well controlled by his medications." Tr. 490. However, subsequent medical notes indicate continuing severe pain on objective examinations. Tr. 432. The ALJ's opinion acknowledges that Plaintiff required additional spinal surgery after his date last insured, Tr. 21, which further undermines the conclusion that Plaintiff's neck, back, and shoulder pain were well-controlled during the relevant period.

A court need not uphold all the ALJ's reasons for rejecting a plaintiff's subjective symptom testimony, so long as substantial evidence supports the ALJ's ultimate determination. *Carmickle*, 533 F.3d at 1162-63. Nevertheless, the credibility determination must be based on clear and convincing reasons supported by substantial evidence in the record. *Id.* at 1160. The reasoning provided by the ALJ hangs by too slender a thread to meet this standard. On this record, the Court concludes that the ALJ erred by discounting Plaintiff's subjective symptom testimony.

### III.    Lay Witness Testimony

Plaintiff contends that the ALJ improperly rejected the lay witness testimony of Plaintiff's family and friends. Lay witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he or she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting a lay witness's testimony must also be "specific." *Stout*, 454 F.3d at 1054. When "the ALJ's error lies in a failure to properly discuss competent lay witness testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

In this case, the ALJ rejected the lay witness testimony because "the accuracy of the conclusions made by third-party sources is questionable because, by virtue of the relationship with the claimant, they cannot be considered a disinterested third party witness whose reports of restriction in functioning would not tend to be discolored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." Tr. 21. The ALJ did not provide any further discussion of the lay witness reports.

The Commissioner concedes that this was error. *See Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009) ("Such a broad rationale for rejection contradicts our insistence that, regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition." (internal quotation marks and citation omitted, alterations normalized)). The Commissioner urges that the Court find the error harmless.

In *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), the Ninth Circuit held that an ALJ erred by failing to discuss testimony from the plaintiff's family members, but that the error was inconsequential to the ultimate nondisability determination because the ALJ had given valid reasons for rejecting the plaintiff's testimony and the lay witness testimony did not describe any limitations beyond those described the plaintiff's testimony. *Id.* at 1122.

As discussed in the previous section, the ALJ erred in discounting Plaintiff's subjective symptom testimony and so that rationale cannot be attributed to the ALJ's rejection of the lay witness testimony. The Court cannot, therefore, conclude that the ALJ's failure to provide legally sufficient reasons for rejecting the lay witness testimony was harmless error.

### IV.    Remedy

In this case, the Court has determined that the ALJ's opinion contains non-harmless errors and so must determine whether remand should be for further proceedings or for award of benefits. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

In this case, the ALJ erred by failing to properly weigh the medical opinion evidence of treating physicians Dr. Conaughty and Dr. Rushton, as well as the lay witness testimony of Plaintiff's friends and family.  The ALJ also erred by failing to give sufficient clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.  The Court further concludes that this error was not harmless.  Upon review of the record, however, the Court cannot conclude this is a circumstance in which remand for benefits is warranted.  Accordingly, the Court will remand this case for further proceedings.

On remand, the ALJ should consider the opinions of Dr. Conaughty and Dr. Rushton and either credit those opinion or give sufficient reasons for discounting those opinions.  The ALJ should also consider Plaintiff's subjective symptom testimony and the lay witness evidence and either credit that evidence or give sufficient reasons for discounting it.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this Opinion & Order. Judgment shall be entered accordingly.

It is so ORDERED and DATED this _____28th_____ day of April, 2020.


      /s/Ann Aiken
ANN AIKEN
United States District Judge